UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------------x
:
ROGER BENNETT and RICHARD ALLEN :
COMBS, on behalf of themselves and all others :
similarly situated, :
                                                *Plaintiffs*, :
:
                  - against - :
:
WAL-MART STORES, INC., :
:
                                                *Defendant*. :
----------------------------------------------------------------x

ONLINE PUBLICATION ONLY

MEMORANDUM AND ORDER

06-CV-5304 (JG) (JO)

A P P E A R A N C E S :

    BALL & SCOTT
        550 Main Avenue
        750 NationsBank Center
        Knoxville, Tennessee 37902
    By:    Gordon Ball
        *Attorney for Plaintiffs*

    JONES DAY
        222 East 41st Street
        New York, New York 10017
    By:    Meir Feder and Thomas Demitrack
        *Attorneys for Defendants*

JOHN GLEESON, United States District Judge:

        This case is an offshoot of the Visa-MasterCard antitrust litigation, the settlement of which I approved in 2003, *see In re Visa Check/MasterMoney Antitrust Litig.*, 297 F. Supp. 2d 503 (E.D.N.Y. 2003) ("*In re Visa Check*"), *aff'd sub nom. Wal-Mart Stores, Inc. v. Visa U.S.A. Inc.*, 396 F.3d 96 (2d Cir. 2005),[1] and it boasts a substantial procedural history of its own.

---

[1] The defendants in this action and its companion case – Wal-Mart Stores, Inc. ("Wal-Mart") and Circuit City Stores, Inc. ("Circuit City"), respectively – were members of the plaintiff class in *In re Visa Check* and participants in the settlement. Wal-Mart, Circuit City and many other named plaintiffs claimed on behalf of millions of merchants in the class that Visa and MasterCard had violated § 1 of the Sherman Act, 15 U.S.C. § 1, by using their considerable market power in the credit card market to force the merchant plaintiffs, through "Honor All Cards" policies, to accept Visa and MasterCard debit cards as well. *See In re Visa Check/MasterMoney Antitrust*

1

Plaintiffs Roger Bennett and Richard Allen Combs, two Tennessee consumers, brought this action to recover overcharges that were initially imposed on merchants by Visa and MasterCard via interchange fees (*i.e.*, transaction costs) – the precise tying arrangement challenged by the merchant plaintiffs in *In re Visa Check* – and that were allegedly passed on to consumers like Plaintiffs in the form of inflated retail prices.

Plaintiffs filed the instant action in the Eastern District of Tennessee in 2005, on the heels of their defeat in Tennessee state court in a separate suit against Visa U.S.A. Inc. ("Visa") and MasterCard International, Inc. ("MasterCard"), *see Bennett v. VISA U.S.A. Inc.*, 198 S.W.3d 747 (Tenn. Ct. App. 2006).[2] The case was transferred to this Court along with its companion case, *Bennett v. Circuit City Stores, Inc.*, No. 06-CV-5303 (JG), in September 2006 due to the cases' relation to *In re Visa Check*. Circuit City Stores, Inc. ("Circuit City") and Wal-Mart moved to dismiss Plaintiffs' amended complaints in both actions in May 2007, and on September 25, 2007, I granted the motions as to Plaintiffs' federal claims against the defendants alleging violations of § 1 of the Sherman Act pursuant to § 4 of the Clayton Act, 15 U.S.C. § 15, and as to Plaintiffs' non-Tennessee state law claims. *Temple v. Circuit City Stores, Inc.*, Nos. 06-CV-5303 and 06 CV 5304, 2007 WL 2790154 (E.D.N.Y. Sept. 25, 2007). I kept Plaintiffs' Tennessee state law claims alive, however, in the interest of giving the parties an opportunity to

---

*Litig.*, 297 F. Supp. 2d 503, 507 (E.D.N.Y. 2003) ("*In re Visa Check*"); *In re Visa Check/MasterMoney Antitrust Litigation* ("*Visa/MasterCard IV*"), No. 96-CV-5238, 2005 WL 2100930, at *1 (E.D.N.Y. Aug. 31, 2005). The merchant plaintiffs also alleged that Visa and MasterCard, through this illegal tying arrangement and other anticompetitive conduct, attempted to monopolize the debit card market in violation of § 2 of the Sherman Act, 15 U.S.C. § 2. In agreeing to settle those claims, Visa and MasterCard promised the merchant plaintiffs, among other things, that they would rescind their Honor All Cards policies and would pay the merchant plaintiffs $3.05 billion in annual installments over a ten-year period – the largest antitrust settlement in history. *In re Visa Check*, 297 F. Supp. 2d at 508; *see also id.* at 509 (stating that the discounted present value of the total compensatory relief promised the merchant plaintiffs pursuant to the settlement was $3,383,400,000).

[2] This "indirect purchaser" suit was one of more than 30 filed by consumer plaintiffs residing in several different states and the District of Columbia, beginning in late 2003. The defendants in most of those actions, including *Bennett v. VISA U.S.A. Inc.*, 198 S.W.3d 747 (Tenn. Ct. App. 2006), were Visa and MasterCard, and the allegations were substantially similar to those made by the merchant plaintiffs in *In re Visa Check*. *See Visa/MasterCard IV*, 2005 WL 2100930, at *1.

be heard on whether the case should be "transferred back to the federal court in Tennessee, in deference to that court's expertise in the applicable law." *Temple v. Circuit City Stores, Inc.*, 2007 WL 2790154, at *9. In October 2007, Plaintiffs moved for reconsideration of my September 25, 2007 order, which I denied on September 26, 2008. Plaintiffs then requested, in a letter filed on February 25, 2011, that their remaining Tennessee state law claims be transferred to the district court for the Eastern District of Tennessee. After receiving Wal-Mart's letter in opposition to Plaintiffs' request to transfer, and holding a telephone conference on the issue on April 4, 2011, I decided that judicial economy would not be promoted by transferring the claims to the federal court in Tennessee and accordingly denied Plaintiffs' request to transfer on the record during the April 4 telephone conference. I further ordered the parties to submit supplemental briefing on Wal-Mart's motion to dismiss Plaintiffs' Tennessee state law claims. For the reasons stated below, Wal-Mart's motion to dismiss those claims is granted.

## BACKGROUND

A. *The Facts*[3]

Wal-Mart was a member of the class of merchant plaintiffs who sued Visa and MasterCard in *In re Visa Check*, alleging that the defendants leveraged their power in the credit card market to force the merchants to accept Visa's and MasterCard's debit cards, and that the defendants also attempted and conspired to monopolize the debit card services market. *See In re Visa Check/MasterMoney Antitrust Litig.*, 2003 WL 1712568, at *1-*2 (E.D.N.Y. Apr. 1, 2003) (denying Visa's and MasterCard's motion for summary judgment, and granting in part and denying in part the merchant plaintiffs' motion for summary judgment). The merchant plaintiffs

---

[3] The following facts are drawn from Plaintiffs' amended complaint, filed March 2, 2007, and are assumed to be true for purposes of the instant motion.

3

claimed that, as a consequence of this illegal tying arrangement,[4] they were required to pay excessive interchange rates for their customers' debit card purchases. *See Temple v. Circuit City Stores, Inc.*, 2007 WL 2790154, at *2. Pursuant to the class action settlement approved by this Court, Visa and MasterCard agreed not to tie their debit and credit products together and to pay more than $3 billion to the merchant plaintiffs in exchange for the release of any and all claims that were or could have been filed against them or their member banks based on the conduct alleged. *See Wal-Mart Stores, Inc. v. Visa U.S.A. Inc.*, 396 F.3d 96, 101 (2d Cir. 2005); Amended Compl. ¶¶ 2, 4.

Plaintiffs Bennett and Combs reside in Tennessee and are holders of Visa Check and MasterMoney debit cards, respectively, with which they purchased goods and/or services from the Wal-Mart store located in Washington County, Tennessee over a number of years. Plaintiffs claim that, despite the adversarial posture it assumed toward Visa and MasterCard in the *In re Visa Check* litigation, Wal-Mart knew that those companies were engaging in an illegal tying arrangement throughout the relevant time period in which Plaintiffs purchased goods and services from Wal-Mart (from 1992[5] until approximately January 4, 2005, when the Second Circuit affirmed the *In re Visa Check* settlement). Wal-Mart nevertheless ignored the illegality of the arrangement, agreed to accept debit cards from its customers, and strategically and "systematically" inflated the prices of its goods and services "for business reasons," *i.e.*, in order to recoup the illegal fees imposed on it by the credit card companies. Plaintiffs claim that Wal-

---

[4] "A tying arrangement is 'an agreement by a party to sell one product but only on the condition that the buyer also purchases a different (or tied) product.'" *Yentsch v. Texaco, Inc.*, 630 F.2d 46, 56 (2d Cir. 1980) (quoting *N. Pac. Ry. Co. v. United States*, 356 U.S. 1, 5 (1958)).

[5] Plaintiffs allege, however, that Wal-Mart did not begin accepting Visa's and MasterCard's debit cards – Visa Check and MasterMoney cards, respectively – until 1996, Amended Compl. ¶ 42, so it appears that the time period at issue here is actually from 1996 until January 2005.

4

Mart therefore acted in concert with Visa and MasterCard and willingly participated in those companies' unlawful conspiracy.  *Id.* ¶¶ 3-5, 12, 28, 41-43.

Plaintiffs filed their original complaint in this putative class action in the Eastern District of Tennessee on August 22, 2005.  After the case was transferred to this Court on September 28, 2006, Plaintiffs filed an amended complaint on March 2, 2007.  In that pleading, Plaintiffs alleged violations by Wal-Mart of (1) § 1 of the Sherman Act, 15 U.S.C. § 1, pursuant to § 4 of the Clayton Act, *id.* § 15, (2) the antitrust statutes of Tennessee and 23 other states, (3) the consumer-protection statutes of 20 states (not including Tennessee), and (4) the unjust enrichment and civil conspiracy laws of Tennessee and 23 other states.  As noted above, as a result of my September 2007 decision granting Wal-Mart's motion to dismiss with respect to the Sherman Act claim and the non-Tennessee state law claims, the only remaining claims in the case are the Tennessee state law claims, which include a claim pursuant to the Tennessee Trade Practices Act (the "TTPA"), and common law claims of unjust enrichment and civil conspiracy.

## DISCUSSION

A.  *Standard of Review*

On a motion to dismiss for failure to state a claim upon which relief can be granted, "the issue is not whether [the] plaintiff is likely to prevail ultimately, but whether [he] is entitled to offer evidence to support the claims."  *Sims v. Artuz*, 230 F.3d 14, 20 (2d Cir. 2000) (quotation marks and brackets omitted).  Wal-Mart's Rule 12(b)(6) motion to dismiss thus tests the legal, not the factual, sufficiency of Plaintiffs' amended complaint.  In ruling on this motion, I must accept the factual allegations in the amended complaint as true.  *Erickson v. Pardus*, 551 U.S. 89, 94 (2007).  I give no effect, however, to "legal conclusions couched as factual allegations."  *Port Dock & Stone Corp. v. Oldcastle Ne., Inc.*, 507 F.3d 117, 121 (2d Cir. 2007).

5

In order to survive a motion to dismiss, a complaint "must contain sufficient factual matter . . . to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* The plaintiff therefore is obligated to "provide the grounds of his entitlement to relief" with "more than labels and conclusions," and "a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555 (quotation marks and brackets omitted). "'[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct,' . . . dismissal is appropriate." *Starr v. Sony BMG Music Entm't*, 592 F.3d 314, 321 (2d Cir. 2010) (quoting *Iqbal*, 129 S. Ct. at 1950).

B. *Wal-Mart's Motion To Dismiss*

Wal-Mart argues that Plaintiffs' remaining claims must be dismissed because they are time-barred. In the alternative, Wal-Mart contends that Plaintiffs have failed to state a claim upon which relief can be granted either for a violation of the TTPA or for unjust enrichment pursuant to the common law. Finally, Wal-Mart asserts that Plaintiffs' failure to state a claim for an underlying tort compels dismissal of their civil conspiracy claim as well. I address these contentions in turn below.

1. *Whether the Claims Are Time-Barred*

Wal-Mart first contends that all of Plaintiffs' claims are time-barred, citing Tennessee's three-year statute of limitations for TTPA and civil conspiracy claims, and observing that Plaintiffs' unjust enrichment claim would be untimely even if a six-year statute of limitations applied to it. Because Plaintiffs filed this action in 2005, nine years after Wal-Mart

6

began accepting Plaintiffs' debit cards for their purchases and as many years after the filing of *In re Visa Check*, Wal-Mart argues that none of Plaintiffs' claims is timely.

Under Tennessee law, there is a three-year statute of limitations for tort claims alleging "injuries to personal or real property," Tenn. Code Ann. § 28-3-105(1) (2007), and those "based upon the alleged violation of any federal or state statute creating monetary liability for personal services rendered, or liquidated damages or other recovery therefor, when no other time of limitation is fixed by the statute creating such liability," *id.* § 28-3-105(3). Claims of unjust enrichment, though not expressly provided for by Tennessee law, have been held by at least some Tennessee courts to carry a six-year statute of limitations. Tenn. Code Ann. § 28-3-109(a)(3) (six-year statute of limitations for "[a]ctions on contracts not otherwise expressly provided for"); *see Miller v. Jackson*, No. 3:10-1078, 2011 WL 2197694, at *1 (M.D. Tenn. June 6, 2011).

In a tort action in which the plaintiff does not discover and reasonably could not be expected to discover that he had a right of action, Tennessee's "discovery rule" applies to toll the otherwise applicable statute of limitations. *Hoffman v. Hosp. Affiliates, Inc.*, 652 S.W.2d 341, 344 (Tenn. 1983).[6] This rule provides that a "'cause of action accrues and the statute of limitations commences to run when the injury occurs or is discovered, or when in the exercise of reasonable care and diligence, it should have been discovered.'" *Abels ex rel. Hunt v. Genie Indus., Inc.*, 202 S.W.3d 99, 106 (Tenn. 2006) (quoting *McCroskey v. Bryant Air Conditioning*

---

[6] Although Tennessee courts do not generally apply the discovery rule to cases arising out of contract, *see, e.g., Dean Witter Reynolds, Inc. v. McCoy*, 853 F. Supp. 1023, 1036 (E.D. Tenn. 1994) ("Since this is an action arising under contract law rather than tort law, the discovery rule is not applicable . . . ."), in my view, the precondition for applying the rule has been met here in light of the nature of Plaintiffs' allegations. Because the crux of their unjust enrichment claim lies in Wal-Mart's strategy to pass on interchange fees to customers through inflated prices – a strategy Plaintiffs allegedly did not discover until May 2003 – it seems appropriate to apply the discovery rule to Plaintiffs' unjust enrichment claim. In other words, Plaintiffs would have had no reason to suspect, at the time of their purchases of Wal-Mart's goods and services, that Wal-Mart was being unjustly enriched; only later did they learn what was hidden in the prices of those goods and services.

7

*Co.*, 524 S.W.2d 487, 491 (Tenn. 1975)); *see also Gilmore v. Davis*, 185 F. App'x 476, 483 (6th Cir. 2006) (per curiam) ("The discovery rule instructs that a cause of action accrues not because of knowledge of facts, but because of knowledge of the elements that make a lawsuit possible."). The plaintiff "need not know the exact legal standards in order to know that [he] has sustained an injury," and once he has detected the injury, he "cannot wait until all of its effects are known, that is, until he knows all of the injurious effects as consequences of an actionable wrong" to bring suit. *Gilmore v. Davis*, 185 F. App'x at 482 (quotation marks omitted); *see also Dean Witter Reynolds, Inc. v. McCoy*, 853 F. Supp. 1023, 1036 (E.D. Tenn. 1994) ("[T]he statute of limitations is tolled only during the period of time when the injured party had no knowledge at all that the wrong had occurred, and, as a reasonable person, was not put on inquiry.").

In the amended complaint, Plaintiffs claim entitlement to equitable tolling of the applicable statutes of limitations on the ground that "[t]he injuries sustained by [them] . . . were unknown by them before at least May 2003 [when Plaintiffs filed their action against Visa and MasterCard in Tennessee state court] and continued until January 4, 2005." Amended Compl. ¶ 81. Plaintiffs attribute the delay in their discovery of their injuries to the "self-concealing" nature of Wal-Mart's conduct and to Wal-Mart's suppression of truthful information regarding their illegal conduct "through a series of affirmative acts or omissions." *Id.* ¶ 82. They also contend that they filed suit "within two years of their discovery that Wal-Mart had passed on the excessive interchange (transaction) fees to consumers." Plaintiffs' Br. in Opp'n to Wal-Mart's Mot. To Dismiss at 27. Wal-Mart retorts that Tennessee does not recognize the doctrine of equitable tolling, *Norton v. Everhart*, 895 S.W.2d 317, 321 (Tenn. 1995),[7] and that Plaintiffs

---

[7] The *Norton* court did make clear, however, that Tennessee recognized the doctrine of equitable estoppel, and the court stated its belief that that doctrine, "with its requirement that the opposing party have engaged in misconduct, more appropriately strikes the balance between the need for predictable procedural rules on the one

8

have no claim to tolling on the ground of fraudulent concealment because they cannot "prove that [Wal-Mart] took affirmative action to conceal the cause of action and that [Plaintiffs] could not have discovered the cause of action despite exercising reasonable diligence," *Benton v. Snyder*, 825 S.W.2d 409, 414 (Tenn. 1992).

Plaintiffs do not identify what specifically caused them in May 2003 to discover the basis of their claims against Wal-Mart. For the purposes of the instant motion to dismiss, however, I will credit Plaintiffs' allegation that they did not discover their claims until then – which is not altogether implausible given that Plaintiffs would not necessarily have discovered their claims against Wal-Mart immediately upon Wal-Mart's filing suit against Visa and MasterCard in 1996 – and therefore deem Plaintiffs' claims to have accrued in May 2003 pursuant to Tennessee's discovery rule. Because Plaintiffs brought the instant action less than three years after May 2003, all of those claims are timely under the applicable statutes of limitations.[8]

2. *The TTPA Claim*

Wal-Mart contends that Plaintiffs have failed to state a claim under the TTPA upon which relief can be granted. Plaintiffs claim that Wal-Mart violated the TTPA by agreeing to pay and ultimately paying excessive interchange fees whenever customers made purchases using Visa and MasterCard debit cards, and by passing the foregoing costs on to Plaintiffs in the form of "artificially-higher prices." Amended Compl. ¶¶ 52-53. Plaintiffs allege that they

---

hand and the need to relieve innocent parties of the consequences of the expiration of the limitations period on the other" than a broad doctrine of equitable tolling. *Norton v. Everhart*, 895 S.W.2d 317, 321 (Tenn. 1995).

[8] Because I find it appropriate to apply Tennessee's discovery rule here, I need not consider Plaintiffs' fraudulent concealment-based tolling argument. I note, however, that I would be hard pressed to accept this argument as a basis for tolling in light of Plaintiffs' failure to establish, *inter alia*, Wal-Mart's wrongful concealment of its actions. *See, e.g.*, *Dayco Corp. v. Goodyear Tire & Rubber Co.*, 525 F.2d 389, 394 (6th Cir. 1975).

suffered "harm to their property" as a result of having to pay these artificially inflated prices for goods and/or services from Wal-Mart. *Id.* ¶ 51. Pursuant to the TTPA,

> [a]ll arrangements, contracts, agreements, trusts, or combinations between persons or corporations made with a view to lessen, or which tend to lessen, full and free competition in the importation or sale of articles imported into this state, or in the manufacture or sale of articles of domestic growth or of domestic raw material, and all arrangements, contracts, agreements, trusts, or combinations between persons or corporations designed, or which tend, to advance, reduce, or control the price or the cost to the producer or the consumer of any such product or article, are declared to be against public policy, unlawful, and void.

Tenn. Code Ann. § 47-25-101 (2001). The TTPA provides a civil remedy to "[a]ny person who may be injured or damaged by any such arrangement, contract, agreement, trust, or combination" in violation of the statute's provisions, *id.* § 47-25-106, and the Supreme Court of Tennessee has held that this remedy extends to indirect purchasers, *Freeman Indus., LLC v. Eastman Chem. Co.*, 172 S.W.3d 512, 517 (Tenn. 2005) (holding that sections 47-25-101 and -102 of the TTPA "reflect a clear intent to protect and afford a remedy to ultimate consumers"); *see also id.* at 518 (holding that the TTPA covers "transaction[s] between the direct purchaser and the consumer in which the price of the product purchased by the consumer is influenced by the antitrust violator's conduct"). An indirect purchaser "may recover from the antitrust violator the amount of the overcharge that the direct purchaser passed on to the indirect purchaser." *Id.*

At the outset of this analysis, I note that Plaintiffs originally framed their TTPA claim against Wal-Mart as asserting an alternative theory of liability to that of their federal claim; for purposes of the Sherman Act, Plaintiffs styled themselves a class of "direct purchasers," whereas, for purposes of the TTPA and other states' antitrust statutes, they labeled themselves "indirect purchasers." *See* Amended Compl. at 14-16. In my previous opinion in

10

this case, I rejected Plaintiffs' attempt to circumvent the bar on indirect purchaser claims[9] under the Sherman Act by naming Wal-Mart as a defendant instead of Visa and MasterCard. Although Plaintiffs had alleged that Wal-Mart, like Visa and MasterCard, violated the Sherman Act, I concluded that Wal-Mart's independent decision, for business reasons, to pass on the Visa/MasterCard overcharge to their customers did not amount to a "contract, combination . . . , or conspiracy" prohibited by the Sherman Act. *Temple v. Circuit City Stores, Inc.*, 2007 WL 2790154, at *5 (quoting 15 U.S.C. § 1). The question presented by the instant motion, then, is whether Plaintiffs can succeed in stating a claim for an antitrust violation by Wal-Mart pursuant to the TTPA where they could not pursuant to the Sherman Act.

I find that they cannot. It does not matter that Plaintiffs conceive of themselves as "indirect purchasers" for purposes of their TTPA claim – they have sued Wal-Mart, and vis-à-vis that defendant, they are direct purchasers. Even if the TTPA differs from the Sherman Act in its allowance of indirect purchaser actions, no such action is presently before me. Putting aside the issue of whether Plaintiffs are direct or indirect purchasers, the chief deficiency in their pleading is its failure to sufficiently allege an agreement or vertical conspiracy between Wal-Mart and Visa and MasterCard. I found in my previous decision that Plaintiffs' allegations of such a vertical conspiracy were insufficient to state a claim upon which relief could be granted, and although the relevant statute has changed with the instant motion,[10] the deficiency in the allegations has not. *See Temple*, 2007 WL 2790154, at *7 (stating that the complaint mentions

---

[9] *See, e.g.*, *Paycom Billing Servs., Inc. v. MasterCard Int'l, Inc.*, 467 F.3d 283, 291-92 (2d Cir. 2006) (applying the indirect purchaser rule to bar a claim under § 1 of the Sherman Act).

[10] In addition to its allowance of indirect purchaser actions, the TTPA differs from the Sherman Act in its application "only to tangible goods, not intangible services." *Bennett v. Visa U.S.A. Inc.*, 198 S.W.3d 747, 751 (Tenn. Ct. App. 2006). This aspect of the statute proved fatal to Bennett's TTPA claim against Visa and MasterCard in Tennessee state court, as the Tennessee Court of Appeals construed the alleged unlawful arrangement between Visa and MasterCard to involve services rather than tangible goods. *See id.* at 751-53; *id.* at 753 ("The TTPA cannot be asserted every time product prices are influenced by anti-competitive conduct in the service industries without effectively expanding the TTPA's scope to include those service industries.").

"no facts to support the claim that such an agreement or conspiracy existed, and the 'naked assertion of conspiracy,' however often repeated, does not do the trick" (quoting *Twombly*, 127 S. Ct. at 1966)). Allegations that Wal-Mart "had actual knowledge of Visa and MasterCard's conduct" and "agreed to pay and did pay excessive interchange fees for *Visa Check* and *MasterMoney* debit cards in order to be able to continue to accept Visa and MasterCard credit cards," Amended Compl. ¶ 52, paired with the claim that Wal-Mart "passed all of the foregoing costs on to [consumers] . . . in the form of artificially-higher prices," *id.* ¶ 53, do not together state a plausible claim of Wal-Mart's forming an agreement with Visa and MasterCard to further the tying arrangement. *See Iqbal v. Hasty*, 490 F.3d 143, 157-58 (2d Cir. 2007) (holding that *Twombly*'s plausibility standard "obliges a pleader to amplify a claim with some factual allegations in those contexts where such amplification is needed to render the claim *plausible*").

    Plaintiffs assert in their supplemental brief opposing Wal-Mart's motion to dismiss that they "are not attacking the Visa/MasterCard credit card/debit card tying arrangement; rather, they challenge Wal-Mart's practice – albeit precipitated by its participation in the tying arrangement – of artificially-inflating [sic] prices at its Tennessee stores." Plaintiffs' Supplemental Br. at 17. Even so, the TTPA requires that Plaintiffs allege some sort of unlawful *arrangement*, *contract* or *agreement* "to lessen, or which tend[s] to lessen, full and free competition in the importation or sale of articles imported into this state," or one that influences "the price or the cost to the producer or the consumer of any such product or article." Tenn. Code Ann. § 47-25-101. Therefore, Plaintiffs' assertion that Wal-Mart's conduct involved goods rather than services, while responsive to the point that the TTPA covers only agreements involving goods, does not get Plaintiffs any closer to adequately alleging an unlawful agreement between Wal-Mart and another actor. *See, e.g.*, *McAdoo Contractors, Inc. v. Harris*, 439 S.W.2d

594, 598 (Tenn. 1969) (stating that the TTPA "condemns agreements 'between' actors for purposes contrary to it"); *see also Freeman Indus.*, 172 S.W.3d at 522 ("The TTPA prohibits *agreements* adversely affecting competition." (emphasis added)).

Accordingly, I find that Plaintiffs have failed to state a claim upon which relief can be granted under the TTPA. As I already have recognized in this case, consumers like Plaintiffs surely were victimized by Visa and MasterCard's tying arrangement, and the fact that Wal-Mart and other merchants ultimately were able to recover from the credit card companies for that arrangement by no means diminishes the harm to the consumers. *See Temple*, 2007 WL 2790154, at *6. Unfortunately, on the bare allegations Plaintiffs have pled, they are no better positioned to obtain a remedy under the TTPA than they were under the Sherman Act.

3. *The Unjust Enrichment Claim*

In order to state a claim for unjust enrichment, a plaintiff must allege: (1) a benefit conferred upon the defendant by the plaintiff, (2) appreciation by the defendant of such benefit, and (3) acceptance of such benefit under such circumstances that it would be inequitable for him to retain the benefit without payment of the value thereof. *Freeman Indus., LLC v. Eastman Chem. Co.*, 172 S.W.3d at 525. The plaintiff also must demonstrate that he exhausted all remedies against the person with whom he was in privity of contract, although this requirement is waived where pursuit of remedies against that person would be futile. *Id.* at 525, 526. The most significant requirement for recovery on this type of claim "is that the enrichment to the defendant be unjust." *Paschall's, Inc. v. Dozier*, 407 S.W.2d 150, 155 (Tenn. 1966).

The theory of unjust enrichment is generally not properly invoked where a contract exists; rather, it is used to impose a contract implied in law in the absence of an actual contract. *See Paschall's*, 407 S.W.2d at 154 (quasi contracts "are not based upon the intention of

13

the parties but are obligations created by law," and "are founded on the principle that a party receiving a benefit desired by him, under circumstances rendering it inequitable to retain it without making compensation, must do so"). A valid contract exists under Tennessee law where there has been "a meeting of the minds of the parties in mutual assent to the terms," and where the contract is "based upon a sufficient consideration, free from fraud or undue influence, not against public policy and sufficiently definite to be enforced." *Glass v. Nw. Airlines, Inc.*, 761 F. Supp. 2d 734, 749 (W.D. Tenn. 2011) (quoting *Doe v. HCA Health Servs. of Tenn., Inc.*, 46 S.W.3d 191, 196 (Tenn. 2001)). In a transaction involving the sale of goods, the Uniform Commercial Code (the "U.C.C.") controls, *Pass v. Shelby Aviation, Inc.*, No. W1999-00018-COA-R9-CV, 2000 WL 388775, at *3 (Tenn. Ct. App. Apr. 13, 2000) and under § 2-204 of the U.C.C., "[a] contract for sale of goods may be made in any manner sufficient to show agreement, including . . . conduct by both parties which recognizes the existence of a contract," U.C.C. § 2-204(1) (2003). Contracts for both goods and services, *i.e.*, "mixed" contracts, are subjected to the "predominant factor" test, such that "[i]f the predominant assets to be transferred" in the "transaction as a whole" are "goods, the U.C.C. governs, but if the predominant assets are non-goods," the common law applies. *Hudson v. Town & Country True Value Hardware, Inc.*, 666 S.W.2d 51, 53 (Tenn. 1984).

Plaintiffs allege that they used their debit cards to "purchase goods and/or services from Wal-Mart in Washington County, Tennessee." Amended Compl. ¶ 12. Whether or not I construe Plaintiffs' transactions with Wal-Mart to be predominantly for the sale of goods, which is a difficult question to resolve on the bare allegations of the amended complaint, I find that Plaintiffs' allegations of unjust enrichment cannot withstand Wal-Mart's motion to dismiss. Plaintiffs do not contest that they received goods and/or services from Wal-Mart in exchange for

14

their payment, by debit card, of the prices set by Wal-Mart. The parties' conduct evidences a mutual intent to follow through with the transaction at Wal-Mart's prices. The fact that Plaintiffs later discovered they had been overcharged for the goods and/or services they purchased, and that Wal-Mart ultimately profited from this price inflation by sharing in the settlement obtained against Visa and MasterCard in *In re Visa Check*, does not alter what both parties intended at the time of the transactions at issue, and Plaintiffs have not alleged any fraud or undue influence on the part of Wal-Mart that would invalidate the contracts in question. *Cf. Glass v. Nw. Airlines*, 761 F. Supp. 2d at 749 ("Northwest does not argue that Plaintiff has failed to show that, when she purchased a Northwest ticket for Glass, she and Northwest formed a contract under which Northwest was required to provide wheelchair assistance to Glass."); *Chase Manhattan Bank, N.A. v. CVE, Inc.*, 206 F. Supp. 2d 900, 909 (M.D. Tenn. 2002) (dismissing unjust enrichment claim in part because, although plaintiff "conferred a benefit upon" defendant in the form of shares of stock, defendant paid $139,379 for those shares and plaintiff "has not shown with any degree of certainty that this amount was not representative of the value of the shares").

Accordingly, because I conclude that Plaintiffs have failed to state a claim for unjust enrichment upon which relief can be granted, that claim is dismissed.

4. *The Civil Conspiracy Claim*

Plaintiffs' final claim against Wal-Mart is one of civil conspiracy pursuant to the common law, which Wal-Mart contends must be dismissed because Plaintiffs have not established the requisite underlying tort. To state a claim for civil conspiracy in Tennessee, a plaintiff must establish (1) a common design between two or more persons, (2) to accomplish by concerted action an unlawful purpose, or a lawful purpose by unlawful means, (3) an overt act in furtherance of the conspiracy, and (4) resulting injury. *Kincaid v. SouthTrust Bank*, 221 S.W.3d

15

32, 38 (Tenn. Ct. App. 2006). As an additional requirement, the plaintiff must establish "an underlying predicate tort allegedly committed pursuant to the conspiracy." *Watson's Carpet & Floor Coverings, Inc. v. McCormick*, 247 S.W.3d 169, 180 (Tenn. Ct. App. 2007). Conclusory allegations of conspiracy unsupported by material facts will not be sufficient to state a claim. *In re Estate of Storey*, No. W2010–00819–COA–R3–CV, 2011 WL 2174901, at *28 (Tenn Ct. App. May 31, 2011).

Putting aside the conclusory nature of Plaintiffs' allegations of a common design among Wal-Mart, Visa and MasterCard, *see, e.g.*, Amended Compl. ¶ 76 ("Wal-Mart and its co-conspirators have willfully, knowingly, intentionally and with specific intent to do so, combined and conspired as described [in the other counts of the Amended Complaint]."), I agree with Wal-Mart that Plaintiffs have not alleged an actionable underlying tort committed pursuant to the alleged conspiracy. *See, e.g.*, *BancorpSouth Bank v. Herter*, 643 F. Supp. 2d 1041, 1056 (W.D. Tenn. 2009); *Greene v. Brown & Williamson Tobacco Corp.*, 72 F. Supp. 2d 882, 887 (W.D. Tenn. 1999) ("If the underlying wrongful conduct is found to be not actionable then the conspiracy claim must also fail."). Accordingly, Plaintiffs' civil conspiracy claim is dismissed.

## CONCLUSION

For the reasons stated above, Wal-Mart's motion to dismiss is granted as to Plaintiffs' Tennessee state law claims.

So ordered.

John Gleeson, U.S.D.J.

Date: September 2, 2011
       Brooklyn, New York